trial in this cause would go in direct opposition to the printed orders of the court. There can be no use whatever in making rules for the regulation of the practice of the court unless we adhere to them. Nor do we apprehend there is any danger of injustice in the present instance.

Motion for the new trial dismissed.

## Richard Caton, indorsee of Dennis De Berdt, *against* William M'Carty.

S. C. 2 Dall. 141.

Declaration filed though not marked *de bene esse,* is no waiver bail.

THIS cause had been removed from the Common Pleas of Philadelphia county by *habeas corpus.* Previous to the entry of bail, the plaintiff's attorney had filed his declaration, without marking the same *de bene esse,* and a question arose before the court whether this was a waiver of bail.

Messrs. Ingersol and Levy *pro def.* contended that by the practice in England, such unconditional declaration would *amount to a waiver, and cited Highmore on Bail, 15, [*104 57. Lib. Prac. Reg. 86. Atty. Pract. in B. R. 77. 1 Richardson's Pract. in C. B. 106.

Mr. Heatley *pro quer.* insisted that even by the English practice, it is no waiver, unless the copy of the declaration be delivered to the defendant, his attorney or agent.

*Per Cur.* We know of no such practice in Pennsylvania, nor do we see any good reason for it, even in England. We individually know, that in all courts wherein we have practised, the usage has been different from that contended for. Besides, if the English practice ought to be extended, why stop at the mere filing of the declaration? Why should not the copy be delivered to the defendant or his attorney? The practice of every court is the law of that court, and we must be governed by our own customs and usages, as the courts at Westminster are governed by theirs. We are clearly of opinion, that the unconditional filing of the declaration in the present instance is no waiver of bail.

Referred to in 5 S. & R., 420.

## Samuel Leach *against* Caleb Armitage.

At Nisi Prius, S. C. 2 Dall. 125.

When a fact has been submitted to a jury, on a variety of evidence, court will not grant a new trial, especially when there has been a view in ejectment.

ON a motion for a new trial in this cause, the chief justice

[Leach *v.* Armitage.]

reported the evidence which was given at the trial, at the last assizes held for Montgomery county.

The suit was an action of trespass, for breaking and entering the close of the plaintiff in Cheltenham township, containing fifteen acres. The defendant pleaded *liberum tenementum*, and the parties were at issue.

The plaintiff shewed a title under a warrant granted to Toby Leach, dated 30th of 9th mo. 1682, for 200 acres of land, and a survey thereon returned into the surveyor general's office on the 25th of 5th mo. 1684.

The defendant deduced his title under a warrant granted to Benjamin Whitehead, dated 27th of 6th mo. 1683, for 250 acres, and a survey thereon returned into the surveyor general's office on the 3d of 7th mo. 1683. The survey for Leach was made prior to that for Whitehead, but the return into the office was posterior. The patent to Whitehead was dated 27th of 4th mo. 1684, and earlier than that to Leach.

It was given in evidence, that a trial was had between Samuel Leach (the now plaintiff,) and Benjamin Armitage, (the father *of the now defendant, under whom he makes title,) in an action of trespass in the Supreme Court in September term 1755, when the plaintiff became nonsuit, on an investigation of his title to the lands now in question; but at that period he was said to have been in his minority. That at the same term, a trial was also had between Isaac Leach (the brother of the said plaintiff, and claiming under the same title,) and the said Benjamin Armitage, in another action of trespass, when a special verdict took place, finding the facts as to the warrants, surveys, and returns, and the patents issued thereon, as before stated; whereupon the court gave judgment for the defendant, upon argument, in September term 1756; and that an ejectment had been brought by the now plaintiff for the lands in question, against the said Benjamin Armitage, which came on to be tried in April term 1775, when another special verdict was found, stating the facts in the former special verdict; whereupon the plaintiff discontinued his suit on the 22d April 1775.

On the late trial it was contended by the plaintiff, that the lands in controversy lying in Cheltenham township, could not have been included under Whitehead's warrant and survey, which were said to relate to lands in Bristol township, and that no actual survey had been made for him. The plaintiff undertook to shew the boundaries of Bristol township, and brought forward maps and plats of survey and a variety of evidence from the records of the land office to prove his assertions. Some ancient witnesses were also produced for the same purpose, and likwise to prove where an old stone corner formerly stood, which was said to have been lately removed.

It was also made a question, in what particular spot the

[Leach v. Armitage.]

survey supposed to have been made for Whitehead, began. Arguments were urged by the counsel, *pro* and *con*, from the draught of Bristol street road and the lines of the adjacent surveys, to shew that the 15 acres of land were included within the survey made for the said Whitehead.

The judges who tried the cause left it to the jury, who had previously viewed the premises, to determine on the whole of the evidence adduced to them, whether the survey made for the said Whitehead comprehended the lands in question; if they found that it did not so comprehend them, then the verdict to be for the plaintiff, but if otherwise, for the defendant. The jury without staying out long from the bar, found a verdict for the plaintiff, with six pence damages, and six pence costs.

Messrs. Lewis and Wilcocks for the defendant, insisted that *the verdict was against the general weight of the evidence, and against the substantial charge of the [*106 court; that the merits of the plaintiff's claim had in fact received three different discussions many years ago, when it must be presumed the facts could be much better ascertained than at present. In the first, the plaintiff had become nonsuit; in the second, judgment had been rendered by the court against his brother, holding under the same title, on a special verdict finding the material facts of both titles; and in the third, upon a like special verdict being found, the plaintiff thought proper to discontinue his suit, not choosing to risque the judgment of the court. When two verdicts have passed the same way on a title to lands, chancery will grant a perpetual injunction. Leighton v. Leighton. 1 Wms. 671. Though it had been laid down in the case of the Earl of Bath v. Sherwine, Prec. in Cha. 261, that equity will not grant an injunction, even after five verdicts in ejectment, yet the authority of that decision had been considerably shaken by Leighton's case, and the animadversions of Ld. C. B. Gilbert, in his Forum Romanum, 195. They concluded that the present cause was worthy of re-examination, and that it was probable justice had not been done by the late verdict.

*E contra.* Messrs. Ingersol and Sergeant contended, that no argument could be deduced against the plaintiff, from his nonsuit in the first action of trespass, as it could not now be ascertained on what grounds and for what causes he had suffered it; and besides he was then a minor:—The second suit was commenced by his brother, and he did not claim under him:—In the third action, it was true, he had discontinued after a special verdict in ejectment, but it is highly probable, there would be no great difficulty at this day, upon the facts stated therein, that the plaintiff would be entitled to judgment. At that day, it might possibly have been the general idea, that no right under the late proprietaries, without a

[Leach *v.* Armitage.]

patent, amounted to a legal title, on which an ejectment could be supported. The general opinion now is very different, and on the best grounds. Though the patent to Leach was posterior to that granted to Whitehead, yet they must severally refer, as to their validity, to the respective dates of the warrants and actual surveys, whereon they were founded. The surveyor was the agent or servant of the proprietaries, the people had no control over him. His acts were binding on his constituents, and his laches in not returning a survey already made, or partiality in returning the survey on a later warrant, in preference to a former warrant, could not *abridge or defeat the title of the person claiming under the elder warrant, or enlarge the title under the younger warrant.

But if the defendant's counsel meant to extend the chancery practice to the present instance, it ought to be done throughout. Why was not the application made in time to the equity side of the court? Why was there no motion made to stay proceedings in an early period of the cause, on the ground of the former verdicts, if such a motion could be sustained? By the defendant's acquiescence, he has lost the benefit of what he now sues for.

But admitting even, that the prior return of survey gave a better title to the original warrantee, the cause was taken up on new grounds on the late trial. The question submitted to the jury, was, whether there was an actual survey made for Benjamin Whitehead, and whether this survey went over into Cheltenham township. The great bulk of the lands lay in Bristol township. The plaintiff brought forward very strong evidence to substantiate the point, that the survey under which the defendant claimed, was confined to Bristol township alone. It was a mere question of fact, and a jury of the first character and reputation in the county, who had the full benefit of a view of the disputed premises, assisted by shewers, decided upon the mere point of fact submitted to them. They did not run counter to the opinion of the court. They judged for themselves upon the whole of the evidence, and must be conceived to have been considerably influenced by what they observed upon the view. The court will not set aside a verdict, though the judge who tried the cause thought differently from the jury, unless they have been guilty of palpable injustice. Such were the opinions of Lord Chief Justices Lee and Pratt. 5 Bac. Abr. 245, 246. A verdict must be of a matter of considerable value, before a new trial is granted. 3 Blackst. Com. 392. Loft. 146, 147. Here there is a verdict for six pence damages only. In ejectments, new trials were not granted formerly, because not conclusive to the right; but they are now granted, because of the change of possession, which in many instances produces inconveniences. 4 Burr. 2224. The present suit is an

[Leach *v.* Armitage.]

action of trespass *vi et armis.* It is neither conclusive to the right, nor can any change of possession take place in pursuance of the verdict; and consequently is not within the reason why new trials are grantable in ejectment causes. If the case deserves re-examination, the defendant may, if he thinks proper, commence an ejectment, to try the title to the lands in controversy, and the parties will then meet on more equal terms than if the court were to award a new trial, which only could be done on payment of costs.

*\*Per curiam.* Upon the trial of the cause, it was [\*108 submitted to the jury upon the great variety of evidence which was given to them on both sides, whether the actual survey made for Benjamin Whitehead included the lands in question. It was fairly left to them on this simple fact, which must necessarily influence their verdict. They must naturally be supposed to be more competent to the decision of such a question, having had the benefit of a view, than any other persons without that species of information. It is laid down in the books, that where there has been a view, the court will not grant a new trial, without strong and special circumstances. (5 Bac. Abr. 240. 11 Mod. 1.)

The present verdict is not conclusive to the right, nor effects any change of the possession. If it be thought proper, the point of title may be tried again in a new action of trespass or ejectment. The damages found are small; and if the defendant was to obtain a new trial, it could only be effected on payment of costs. The courts' setting aside the present verdict, would be throwing an unreasonable slur on the plaintiff's title, which if it should come before the court again for discussion, ought to be tried on the fairest grounds.

We are therefore unanimously of opinion, that the rule to shew cause why a new trial should not be granted, be discharged, and that judgment be entered for the plaintiff.